IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH HALL-MOTEN, as Independent Administrator of the Estate of JOSEPH HALL, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 05 C 5510 |
| KEVIN SMITH, M.D., ARTHUR D. FUNK, M.D., VICKI HETMAN, ADDUS HEALTHCARE, INC., and WEXFORD HEALTH SOURCES, INC. | ) ) ) ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

In August 2001, Joseph Hall ("Hall")—an inmate housed by the Illinois Department of Corrections—began to complain about back pain and a small lump that had appeared on his back. However, it was not until October 2002 that Hall was diagnosed with cancer. Hall lost his battle with cancer and died on April 9, 2005. Hall's mother, Elizabeth Hall-Moten ("Hall-Moten"), filed this lawsuit on behalf of Hall's estate on September 23, 2005. As stated in her Fourth Amended Complaint, (Dkt. No. 195), Hall-Moten brings claims against Dr. Kevin Smith, Dr. Arthur D. Funk, Vicki Hetman, Addus HealthCare Inc., and Wexford Health Sources, Inc. for deliberate indifference to Hall's serious medical condition under 42 U.S.C. § 1983 (Count I), wrongful death (Count II), and survival (Count III); she also brings breach of contract claims against Wexford Health Sources, Inc. (Count IV) and Addus HealthCare, Inc. (Count V), alleging that Hall was a third-party beneficiary of their health services contracts with the Illinois

1

Department of Corrections.

Now pending before the court are three motions for summary judgment, filed by Dr. Kevin Smith, Dr. Arthur D. Funk, and Wexford Health Sources, Inc. ("the Wexford Defendants") (Dkt. No. 205); Vicki Hetman ("Hetman") (Dkt. No. 209); and Dr. Kevin Smith[1] and Addus HealthCare, Inc. ("the Addus Defendants") (Dkt. No. 213). For the reasons set forth below, the motions are granted and denied as follows: (1) the Wexford Defendants' motion is granted in part and denied in part: judgment is entered in favor of the Wexford Defendants on Counts I, II, III, and IV and the Wexford Defendants' request for attorneys' fees is denied; (2) Hetman's motion is granted and judgment is entered in her favor on Counts I, II and III; (3) the Addus Defendants' motion is granted in part and denied in part: judgment is entered in favor of the Addus Defendants on Counts I, II, and III and summary judgment is denied as to Count V.

## BACKGROUND

On October 1, 1999, Hall was arrested and sentenced to the custody of the Illinois Department of Corrections. In August 2001, while incarcerated at the Logan Correctional Center ("Logan"), Hall began to complain about back pain and a small lump that had appeared on his back.

On September 1, 2001, Hall was transferred from Logan to the Pontiac Correctional Center ("Pontiac"). Pursuant to a contract with the State of Illinois, defendant Wexford Health Sources, Inc. ("Wexford") was responsible for providing medical care to Pontiac inmates during the time of Hall's incarceration. Wexford employed defendant Dr. Kevin Smith ("Dr. Smith") as

---

[1] Dr. Kevin Smith was employed by both Wexford Health Sources, Inc. and Addus HealthCare, Inc. at different times relevant to this lawsuit.

a staff physician at Pontiac and defendant Dr. Arthur D. Funk ("Dr. Funk") as the Medical Director of Pontiac during the relevant time period. While at Pontiac, Hall sought medical treatment for his back. He was seen by nurses and medical technicians, and received Bengay and ibuprofen on fourteen occasions from December 2, 2001 through April 18, 2002, and again on August 18, 2002.

While Dr. Funk was the Medical Director at Pontiac, he did not meet Hall or provide any treatment to Hall, and, to Dr. Funk's knowledge, Hall was never referred to him for any medical needs. Hall wrote Dr. Funk letters on three separate occasions regarding his healthcare needs, and Dr. Funk replied to these letters on January 10, 2002, February 19, 2002 and February 25, 2002, advising Hall to contact a correctional medical technician for assistance. Dr. Smith saw Hall on March 12, 2002, but Hall was uncooperative and the examination had to be terminated before its completion. Dr. Smith recommended that Hall return to the clinic in one week, at which point Dr. Smith hoped Hall would be more cooperative. On March 20, 2002, Hall returned to the clinic and was seen by another doctor. Dr. Smith did not treat Hall at Pontiac on any occasion other than on March 12, 2002.

Defendant Vicki Hetman ("Hetman") was the Health Care Administrator at Pontiac during the time of Hall's incarceration at Pontiac. As the Health Care Administrator, Hetman's duties included ensuring that Wexford delivered health services pursuant to its contract and that both State employees and Wexford employees provided services in accordance with the rules and regulations of the State of Illinois. Hetman was not in a position to provide medical treatment to inmates, did not attend sick call, could not make appointments for medical treatment, and could not change a course of treatment, or tell doctors, nurses, or correctional

3

medical technicians how to treat patients. Hetman does not have any medical training, and her bachelor's degree is in Criminal Justice.

On three occasions, Hetman responded in writing to letters from Hall requesting health services for his back pain. On February 20, 2002, Hetman told Hall that a correctional medical technician had been advised to see him and, because she could not verify that this had occurred, the Director of Nursing was advised to see Hall in Urgent Care. On March 7, 2002, Hetman directed Hall to contact a correctional medical technician if he wished to receive "Icy Hot" or Bengay for his back pain. On March 18, 2002, Hetman responded to a letter by Hall by outlining the steps Hall had previously taken to obtain medical treatment, including his visit to the clinic on March 12, 2002. Hetman did not have any other correspondence with Hall while he was incarcerated at Pontiac.

In early to mid-May of 2002, Hall was transferred to the Stateville Correctional Center ("Stateville"). Pursuant to a contract with the State of Illinois, defendant Addus HealthCare, Inc. ("Addus") was responsible for providing medical care to Stateville inmates during the time Hall was incarcerated there. Dr. Smith became the Medical Director at Stateville in late 2001 or early 2002,[2] where he was employed by Addus. While at Stateville, Hall was disciplined for insolence

---

[2] Hall-Moten does not dispute that Dr. Smith was the Medical Director at Stateville from late 2001/early 2002 until May 2004. (Addus' 56.1(a)(3) Stmt. ¶ 3.) However, this time frame appears to conflict with the undisputed fact that Dr. Smith treated Hall at Pontiac's clinic on March 12, 2002. (Wexford's 56.1(a)(3) Stmt. ¶¶ 8-10.) In response to the question "When did you go over to Stateville, as a medical director?," Dr. Smith testified "I believe – I want to say it was late December 2001 until January 2002. I'm a little fuzzy on that period." (Smith Dep. at 9:8-12.) In light of the professed unreliability of Dr. Smith's testimony on this point, and the parties' lack of concern regarding the apparent discrepancy between these dates, the court assumes that Dr. Smith either did not begin his position at Stateville until sometime after March 12, 2002 or that there was some overlap between his positions at Pontiac and Stateville.

4

and disobeying a direct order in relation to Hall's refusal on August 5, 2002, to leave the healthcare unit until he was seen by a doctor. On August 18, 2002, Hall filed a grievance regarding his medical treatment at Stateville. Later, in September 2002, Hall suffered from a seizure and was admitted to the University of Illinois-Chicago Medical Center.

On September 30, 2002, Hall-Moten filed a Complaint and Emergency Motion in the Chancery Division of the Circuit Court of Cook County, Illinois, alleging that the physicians associated with the Illinois Department of Corrections were not providing Hall proper medical treatment and seeking to have Hall remain in the University of Illinois-Chicago Medical Center for the purpose of awaiting biopsy results and obtaining further medical treatment. Hall-Moten told Hall that she had filed the emergency motion on his behalf.

On October 18, 2002, Hall was diagnosed with Extraskeletal Ewings Sarcoma/Primitive Neuroecteodermal Tumor. At that time, a Dr. Snow informed Hall-Moten of Hall's diagnosis over the phone. Dr. Snow also told Hall-Moten during the same October 2002 phone call that Hall's prognosis would have been better if he had been brought in earlier, as the doctors could have eradicated the mass before it got so big. Hall was released from the Illinois Department of Corrections in November 2002, and died of cancer on April 9, 2005. As stated earlier, this lawsuit was filed on September 23, 2005.

## LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, the

court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. *Omega Healthcare Investors, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 857 (7th Cir. 2007). However, "[o]nce a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)). The court does not make credibility determinations or weigh conflicting evidence. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Summary judgment will be granted in favor of the moving party if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## ANALYSIS

1. Applicable Statutes of Limitations

All of the defendants assert that summary judgment is appropriate in their favor because Hall's[3] claims were not filed within the applicable statute of limitations. Additionally, each of the parties—including Hall-Moten—appears to agree that Hall's claims are all subject to a two-year statute of limitations. However, the parties rely on different statutory provisions in support of this proposition. Because this question of law is essential to a proper analysis of the defendants' statute of limitations defenses, the court analyzes the appropriate statute of

---

[3] As the administrator of Hall's estate, Hall-Moten brings the claims in this lawsuit on behalf of Hall. The court will consider these claims to be Hall's for the sake of simplicity.

limitations for each claim below.

A.    Hall's § 1983 Claim (Count I)

It is well established that the statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 is borrowed from the forum state's statute of limitations for personal injury claims. *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)). The statute of limitations on Hall's § 1983 claim is therefore two years. *Id.*; *see also* 735 ILCS 5/13-202. This two-year period is measured from the date of the claim's accrual as defined by federal law. *Sellars v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996). Pursuant to federal law, Hall's § 1983 claim accrued when he knew or should have known that his constitutional rights had been violated. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006); *see also Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). When, or whether, Hall understood the full extent of his injury is irrelevant for purposes of accrual. *Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994) ("[t]he statute of limitations begins to run upon the discovery of the injury, even if the full extent of the injury is not discovered until much later").

Hall-Moten does not dispute that Hall had reason to know by October 18, 2002, at the latest—the date Hall was diagnosed with cancer—that he had a possible claim for deliberate indifference against the named defendants.[4] Nevertheless, this lawsuit was not filed until September 23, 2005, almost three years after Hall's claim accrued. Hall's § 1983 claim is therefore untimely and will be barred under the statute of limitations, absent the application of

---

[4] To prevail on a § 1983 claim for deliberate indifference to a serious medical need, a plaintiff must show that a prison official both "[knew] of and disregard[ed] an excessive risk to inmate health" and that the prisoner has a medical condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

7

equitable tolling.

B.     State Law Claims (Counts II-V)

Both Hetman and the Wexford Defendants argue that Hall cannot maintain his wrongful death cause of action against them (Count II) because Hall did not have a right of recovery for his injuries at the time of his death. The Illinois Wrongful Death Act authorizes claims in cases where the decedent would have been entitled to maintain an action for personal injuries against the defendants "if death had not ensued." 740 ILCS 180/1. Conversely, "a wrongful death action is barred if the decedent, at the time of death, would not have been able to pursue an action for personal injuries." *Varelis v. Nw. Mem'l Hosp.*, 657 N.E.2d 997, 999-1000 (Ill. 1995). At the time of Hall's death on April 9, 2005, the two-year statute of limitations on any personal injury claim Hall might have brought against the defendants had already expired.[5] Accordingly, Hall-Moten "cannot now maintain this action for wrongful death" under Illinois law absent the application of equitable tolling principles. *Lambert v. Vill. of Summit*, 433 N.E.2d 1016, 1018-19 (Ill. App. Ct. 1st Dist. 1982) (citing *Mooney v. City of Chicago*, 88 N.E. 194 (Ill. 1909) and *Biddy v. Blue Bird Air Serv.*, 30 N.E.2d 14 (Ill. 1940)).[6]

---

[5] Under Illinois law, personal injury claims accrue when "a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Witherell v. Weimer*, 421 N.E.2d 869, 874 (Ill. 1981). Hall-Moten does not dispute that Hall's potential personal injury claims against the named defendants accrued on October 18, 2002 and expired on October 18, 2004.

[6] The Addus Defendants rely on a different provision of Illinois law to support their statute of limitations argument. Section 13-212(a) prescribes a two-year statute of limitations on "action[s] for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State." 735 ILCS 5/13-212(a). Because any potential cause of action for medical malpractice would also have expired on October 18, 2004, prior to Hall's death, such a claim likewise could not form the basis of a wrongful death cause of action in this case. *See Young v. McKiegue*, 708 N.E.2d 493, 499 (Ill. App. Ct. 1st Dist. 1999)

8

Similarly, the Illinois Survival Act "allows a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died." *Advincula v. United Blood Servs.*, 678 N.E.2d 1009, 1029 (Ill. 1996); *see* 755 ILCS 5/27-6. As with claims brought pursuant to the Wrongful Death Act, the right to bring a cause of action under the Survival Act is extinguished if the applicable statute of limitations would have barred the decedent from asserting the same cause of action during his lifetime. *Real v. Kim*, 445 N.E.2d 783, 787 (Ill. App. Ct. 1st Dist. 1983). Because Hall's underlying personal injury claims had run at the time of his death, his claim for survival (Count III) cannot succeed on the basis of these claims absent the application of equitable tolling principles.

Finally, the court addresses the statute of limitations on Hall's breach of contract claims against the corporate defendants (Counts IV and V). The Wexford Defendants have not argued that Hall's breach of contract claim is barred by the applicable statute of limitations, thus the court will proceed to analyze Count IV on the merits below. The Addus Defendants argue that Hall's breach of contract claim is barred by the Illinois medical malpractice statue of limitations set forth at 735 ILCS 5/13-212:

> . . . no action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be

---

(medical malpractice claims accrue when a party "knows or reasonably should have known both that an injury occurred and that it was wrongfully caused"). Although plaintiffs are permitted to bring later claims under the Wrongful Death Act "where the wrongful death claim is predicated upon a claim of medical malpractice *that was not apparent to the plaintiff at the time of death*," *id.* at 498 (emphasis added), there is no suggestion that such an approach is warranted in this case. Ultimately, Hall-Moten does not dispute that Hall had no viable personal injury claims against any of the named defendants—whether governed by the personal injury statute of limitations or the medical malpractice statute of limitations—at the time of his death, absent the application of equitable tolling.

9

> brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first . . . .

735 ILCS 5/13-212(a). By the statute's plain language, however, this statute of limitations only applies to actions brought "against any physician, dentist, registered nurse or hospital." As a private corporation providing medical personnel to Stateville through contractual agreement with the Illinois Department of Corrections, Addus does not appear to fit this description. The Supreme Court of Illinois has recognized that "the statute does not extend to all classes of health care providers who could be the subject of medical malpractice actions. Rather, it affords protection only to the specific health care providers listed therein and, in certain circumstances, to employees of such providers when acting within the scope of their employment." *Solich v. George & Anna Portes Cancer Prevention Ctr. of Chicago, Inc.*, 630 N.E.2d 820, 822-23 (Ill. 1994) (citing *Anderson v. Wagner*, 402 N.E.2d 560 (Ill. 1979) and *Penkava v. Kasbohm*, 510 N.E.2d 883 (Ill. 1987)). The Addus Defendants generally make no attempt to explain why Addus should be considered a physician, dentist, registered nurse or hospital, or an employee thereof, for purposes of applying section 13-212(a)'s two-year limitations period.

The Addus Defendants cite *Thornton v. Shah*, 777 N.E.2d 396 (Ill. App. Ct. 1st. Dist. 2002), in support of the proposition that all breach of contract claims "brought as a result of injury or death [a]rising out of patient care" are subject to the statute of limitations set forth in section 13-212(a). (Addus Defs.' Mem. at 7.) However, *Thornton*'s holding is specific to defendant health maintenance organizations. *See Thornton*, 777 N.E.2d at 403 ("[t]he supreme court's findings of HMO liability for medical malpractice . . . expanded the holding in *Solich* to include HMOs as a class of health care providers afforded consideration under section 13-212")

(citing *Petrovich v. Share Health Plan of Ill., Inc.*, 719 N.E.2d 756 (Ill. 1999) and *Jones v. Chicago HMO Ltd. of Ill.*, 730 N.E.2d 1119 (Ill. 2000)). Because the record does not suggest that Addus is a health maintenance organization, the holding of *Thornton* is inapposite.

This court is not persuaded that section 13-212(a) applies to the breach of contract claim brought against Addus in this case. Generally, breach of contract claims in Illinois are governed by a ten-year statute of limitations. *See* 735 ILCS 5/13-206. Accordingly, the Addus Defendants' motion for summary judgment on Count V is denied to the extent the Addus Defendants rely on a statute of limitations defense. The court notes that the merits of Hall's breach of contract claim have not been addressed by either party at this time. Consequently, the case will proceed to trial as scheduled on June 22, 2009 if a settlement is not reached.

2.  Legal Disability

Hall-Moten asserts that the statute of limitations on each of Hall's claims should be tolled because Hall suffered from a legal disability that impeded his ability to timely file his claims while he was alive. Illinois tolling laws apply not only to Hall's state law claims, but to his § 1983 claim as well. *Wilson*, 956 F.2d at 740. Under Illinois law, the statute of limitations for personal injury claims is tolled "[i]f the person entitled to bring an action . . . at the time the cause of action is accrued . . . is under a legal disability." 735 ILCS 5/13-211; *see also* 735 ILCS 5/13-212(c) (same for medical malpractice lawsuits). "A person suffers from a 'legal disability' where he or she is 'entirely without understanding or capacity to make or communicate decisions regarding his [or her] person and totally unable to manage his [or her] estate or financial affairs.'" *In re Doe*, 703 N.E.2d 413, 414 (Ill. App. Ct. 1st Dist. 1998) (quoting *Estate of Riha v. Christ Hosp.*, 544 N.E.2d 403, 405 (Ill. App. Ct. 1st Dist. 1989)). A legal disability will not be found if

the plaintiff is able to comprehend "the nature of his injury and its implications." *Sille v. McCann Constr. Specialties, Co.*, 638 N.E.2d 676, 680 (Ill. App. Ct. 1st Dist. 1994).

Hall-Moten contends that Hall was legally disabled because he suffered from bipolar disorder, Attention Deficit Hyperactivity Disorder, and depression. She further notes that Hall had been prescribed the medications Depakote and Ritalin, was treated at several mental health institutions for mental illness, exhibited an IQ level indicative of mental retardation, and was receiving SSI for mental illness—all before his incarceration. Hall also appears to have had difficulty holding down a job and managing his finances. After he was released from incarceration, Hall was depressed, in pain, and ill from chemotherapy.[7]

None of these facts suggest, however, that Hall was unable to comprehend the nature of his injury and its implications. Rather, the record reflects that Hall was well aware of his right to medical care while incarcerated and appropriately concerned about the lack of care he was receiving from the Illinois Department of Corrections' health care providers. In February and March of 2002, Hall wrote six letters to Hetman and Dr. Funk complaining about his back pain and other ailments. In September 2002, he filed a grievance with the Illinois Department of Corrections concerning his health care. He was also aware in September 2002 that a lawsuit had

---

[7] Hall-Moten has not properly set forth these additional facts pursuant to Local Rule 56.1(b)(3)(C), despite being afforded an opportunity to correct her original omission of a separate statement of additional facts. The defendants have objected to many of the facts set forth in Hall-Moten's "Amended 56.1(b)(3)(C) Additional Facts," (Dkt. No. 252), on the grounds of hearsay, relevance, competence of the witness, and failure to cite support in the record. The defendants also object to Hall-Moten's reliance on facts that were not included in her amended Local Rule 56.1(b)(3)(C) statement for purposes of her argument. Because Hall-Moten's arguments fail on their merits, the court finds that Hall-Moten's procedural errors do not prejudice the defendants. For the sake of simplicity, the court will accept all of Hall-Moten's allegations as though they were supported by the record, the Federal Rules of Evidence, and Hall-Moten's amended Local Rule 56.1(b)(3)(C) statement.

been filed to address the standard of care he was receiving at the hands of the Illinois Department of Corrections, based on information he had provided to his mother.

There is no indication in the record that Hall's understanding of his injury and its implications diminished after his release from custody. The fact that Hall suffered from a mental illness is alone insufficient evidence of a legal disability. *In re Doe*, 703 N.E.2d at 414 ("many impairments both physical and mental may be termed disabilities, but all are not legal disabilities"); *see also Miller v. Runyon*, 77 F.3d 189, 192 (7th Cir. 1996) ("Most mental illnesses today are treatable by drugs that restore the patient to at least a reasonable approximation of normal mentation and behavior.") Furthermore, even if Hall continued to have trouble holding down a job or managing his finances—*e.g.* was totally unable to manage his affairs—there is no suggestion that he was *also* "without understanding or capacity to make or communicate decisions about his person." *Selvy v. Beigel*, 723 N.E.2d 702, 708-09 (Ill. App. Ct. 1st Dist. 1999). The record demonstrates that Hall was clearly able to understand and communicate his decisions while incarcerated and, as far as the court can discern, the only change in Hall's condition upon his release was his experience of depression, pain, and illness associated with chemotherapy. These types of experiences are not normally or necessarily associated with an inability to comprehend, make, or communicate personal decisions. Without more, a factfinder cannot reasonably infer that Hall lost this ability and became legally disabled afer his release from prison. The court understands that it may have been inconvenient, or even quite difficult, for Hall to file his claims while he battled a variety of medical problems. However, there is simply no evidence that these problems impacted his ability to proceed as a legally competent adult. Illinois' provision for tolling in the case of a legal disability cannot be

applied to Hall's claims.

3.  Fraudulent Concealment

Next, Hall-Moten contends that the statute of limitations should be tolled pursuant to Illinois' fraudulent concealment provision. 735 ILCS 5/13-215. This provision permits a five-year statute of limitations from the date a plaintiff discovers a cause of action, "[i]f a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto." *Id.* Fraudulent concealment is demonstrated through affirmative acts or omissions taken by the defendant "to lull or induce a claimant into delaying filing his claim or to prevent a claimant from discovering his claim." *Barratt v. Goldberg*, 694 N.E.2d 604, 608 (Ill. App. Ct. 1st Dist. 1998). Such acts or omissions must be different from those forming the basis of the cause of action, unless the plaintiff demonstrates that the acts or omissions would tend to conceal the cause of action. *Id.*

In this case, Hall-Moten argues that the defendants knew Hall had cancer and attempted to fraudulently conceal his condition by only giving him ibuprofen and Bengay. This argument fails for a number of reasons. First, although Hall's claims against the defendants accrued *no later than* the date of his cancer diagnosis, the diagnosis itself was not an essential element of Hall's claims against the defendants. To prevail on his deliberate indifference claim, Hall needed to demonstrate only that he had a medical condition "that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno*, 414 F.3d at 653 (emphasis added). As Hall's condition became more and more obvious to himself and others, the lack of a specific diagnosis became less important to his claim. Relatedly, Hall-Moten has not shown that the defendants' acts or

14

omissions tended to conceal Hall's potential cause of action. The defendants' decision to treat Hall with ibuprofen and Bengay was in fact *not* likely to conceal Hall's cancerous condition, as Hall's symptoms continued unabated and were likely to (and did) become worse. Additionally, Hall-Moten has not set forth any affirmative acts or omissions other than those forming the foundation of Hall's claims that the defendants were deliberately indifferent to his serious medical needs. Finally, Hall-Moten cannot prevail on her fraudulent concealment argument because Hall's ability to file within the two-year statutory period was not impacted by the defendants' conduct. Illinois courts have held that "if the plaintiff discovers the fraudulent concealment and a reasonable time remains within the relevant limitations period, section 13-215 of the Code will not apply to lengthen the limitations period." *Barratt*, 694 N.E.2d at 609 (citations omitted). Hall-Moten does not suggest that either she or Hall discovered the defendants' conduct *after* October 18, 2002. For all of these reasons, the court declines to toll the applicable statutes of limitations on the basis of fraudulent concealment.

4.  Breach of Contract (Count IV)

The Wexford Defendants argue that Hall-Moten cannot succeed on his breach of contract claim because Hall was not an intended third-party beneficiary of Wexford's contract with the Illinois Department of Corrections. In support of this argument, the Wexford Defendants note that Hall-Moten has directed the court to no contractual language expressly indicating that Hall was an intended beneficiary of the contract. The Wexford Defendants also note that Hall-Moten has failed to identify any particular benefit Hall expected to receive pursuant to the terms of the contract.

Under Illinois law, a third-party beneficiary may sue to enforce a contract if it is clear

that "the contracting parties intended to confer a benefit upon a nonparty to their agreement." *Quinn v. McGraw-Hill Cos.*, 168 F.3d 331, 334 (7th Cir. 1999) (quoting *XL Disposal Corp. v. John Sexton Contractors Co.*, 659 N.E.2d 1312, 1316 (Ill. 1995)). This intention must be evidenced by an express declaration "or its functional equivalent," and there is a strong presumption against the assumption that contracting parties intended to benefit a third-party. *Id.* "The intentions of the parties to the [contract] are to be 'gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution.'" *Jackson Nat'l Life Ins. Co. v. Gofen & Glossberg, Inc.*, 882 F. Supp. 713, 721 (N.D. Ill. 1995) (quoting *Carson Pirie Scott & Co. v. Parrett*, 178 N.E. 498, 501 (Ill. 1931)).

In this case, Hall-Moten has not directed the court to any contractual language demonstrating the intent of the parties or any particular circumstances surrounding the parties at the time of the contract's execution. Rather, she argues that "[t]he intention here is apparent, from the service provided by Wexford to IDOC"—namely, the provision of health care services to inmates. (Pl.'s Resp. at 12.) However, just because Hall benefitted from a contract does not mean that Wexford and the Illinois Department of Corrections did not enter into the contract for their own purposes. *Quinn*, 168 F.3d at 334-35 ("We do not doubt that investors derive valuable information from an S & P bond rating . . . . The pertinent question, however, is whether the actual [...] contract contains either express language identifying purchasers like Quinn by name or its functional equivalent."). Without any specific evidence that the Illinois Department of Corrections and Wexford entered into their contract with the intention of benefitting inmates like Hall, the court cannot find circumstantially that Hall is a third-party beneficiary entitled to enforce the contract. Moreover, the court notes that Hall's breach of contract claim is destined to

16

fail because Hall-Moten has not directed the court to any particular contract provision that Wexford is alleged to have breached. Summary judgment is therefore granted in favor of Wexford on Count IV.

5. Attorneys' Fees

Finally, the Wexford Defendants seek an award of attorneys' fees pursuant to 42 U.S.C. § 1988(b). This court is permitted to allow the prevailing defendants attorneys' fees if it finds that "the plaintiff's action is 'meritless in the sense that it is groundless or without foundation.'" *Munson v. Milwaukee Bd. of Sch. Dirs.*, 969 F.2d 266 (7th Cir. 1992) (quoting *Hughes v. Rowe*, 449 U.S. 5 (1980)). "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Hughes*, 449 U.S. at 14. Rather, a court should assess fees only if it finds that the plaintiff's claim "was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Id.* (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)).

In this case, the court has not addressed the substantive merits of most of Hall's claims. To the extent the court has rejected Hall-Moten's equitable tolling argument, the court notes that Hall-Moten's arguments on the procedural merits of her position were not altogether groundless. Hall does appear to have had some difficulty managing his affairs, and it was not unreasonable for Hall-Moten to believe this may have entitled him to a finding of legal incompetency. The Wexford Defendants' request for attorneys' fees is therefore denied.

CONCLUSION

For the reasons stated above, the Wexford Defendants' motion for summary judgment (Dkt. No. 205) is granted in part and denied in part: judgment is entered in favor of the Wexford Defendants on Counts I, II, III and IV and the Wexford Defendants' request for attorneys' fees is denied; Hetman's motion for summary judgment (Dkt. No. 209) is granted and judgment is entered in favor of Hetman on Counts I, II, and III; the Addus Defendants' motion for summary judgment (Dkt. No. 213) is granted in part and denied in part: judgment is entered in favor of the Addus Defendants on Counts I, II, and III and summary judgment is denied as to Count V.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: April 17, 2009